## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| STEPHEN BUSHANSKY, on Behalf of Himself and All Others Similarly Situated, | Civil Action No.: |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
| MEDEQUITIES REALTY TRUST, INC., JOHN W. MCROBERTS, RANDALL L. CHURCHEY, JOHN N. FOY, STEVEN I. GERINGER, STEPHEN L. GUILLARD, WILLIAM C. HARLAN, ELLIOTT MANDELBAUM, and TODD W. MANSFIELD, | |
| Defendants. | |

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of his counsel as to all other allegations herein, as follows:

## SUMMARY OF THE ACTION

1.      This is a class action brought on behalf of the public stockholders of MedEquities Realty Trust, Inc. ("MedEquities" or the "Company") against MedEquities and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9 and to enjoin the vote on a proposed transaction, pursuant to which MedEquities will be acquired by

Omega Healthcare Investors, Inc. ("Omega") (the "Proposed Transaction").

2.     On January 2, 2019, MedEquities and Omega issued a joint press release announcing they had entered into an Agreement and Plan of Merger dated January 2, 2019 (the "Merger Agreement").   Pursuant to the terms of the Merger Agreement, each share of MedEquities common stock will be converted into the right to receive (i) 0.235 of a share of Omega common stock, and (ii) $2.00 in cash, plus a special cash dividend of $0.21 per share of MedEquities common stock to be paid at closing of the transaction (the "Merger Consideration").   Based on the closing price of Omega common stock of $35.15 per share on December 31, 2018, the implied value of the Merger Consideration is $10.26 per share. Separately, MedEquities will declare a special cash dividend of $0.21 per share payable to record holders of MedEquities common stock immediately prior to the closing of the Proposed Transaction. The Proposed Transaction represents an enterprise value of approximately $600 million.

3.     On February 11, 2019, Omega filed a registration statement containing a joint proxy statement/prospectus on Form S-4 ("Registration Statement") with the SEC in connection with the Proposed Transaction.    The Registration Statement, which recommends that MedEquities stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the actual intrinsic standalone value of the Company and Omega; (ii) the financial analyses performed by the Company's financial advisor Citigroup Global Markets Inc. ("Citi"); (iii) the background of the Proposed Transaction; and (iv) Citi's potential conflicts of interest.   The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as MedEquities stockholders need such information in order to cast a fully-informed vote in

connection with the Proposed Transaction.

4.     In short, unless remedied, MedEquities' public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391 because MedEquities is headquartered in this District, and a substantial portion of the events or omissions giving rise to the claims occurred in this District.  Moreover, each of the Individual Defendants as Company officers and/or directors has extensive contacts within this District.

## PARTIES

8.     Plaintiff is, and has been continuously throughout all times relevant hereto, a continuous stockholder of MedEquities.

9.     MedEquities, a Maryland chartered corporation, is a self-managed and self-

3

administered real estate investment trust that invests in a diversified mix of healthcare properties and healthcare-related real estate debt investments. The Company's common stock is traded on the New York Stock Exchange under the ticker symbol "MRT."

10.     Defendant John W. McRoberts ("McRoberts") has been Chief Executive Officer ("CEO") and Chairman of the Board since its formation in 2014.

11.     Defendant Randall L. Churchey ("Churchey") has been a director of the Company since July 2014.

12.     Defendant John N. Foy ("Foy") has been a director of the Company since July 2014.

13.     Defendant Steven I. Geringer ("Geringer") has been a director of the Company since August 2015.

14.     Defendant Stephen L. Guillard ("Guillard") has been a director of the Company since August 2015.

15.     Defendant William C. Harlan ("Harlan") has been President, Chief Operating Officer and a director of the Company since July 2014.

16.     Defendant Elliott Mandelbaum ("Mandelbaum") has been a director of the Company since July 2014.

17.     Defendant Todd W. Mansfield ("Mansfield") has been a director of the company since February 2018.

18.     Defendants referenced in paragraphs 10 to 17 are collectively referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

19.     Omega, a Maryland corporation, is a real estate investment trust that invests in the

long-term healthcare industry, primarily in skilled nursing and assisted living facilities. Its portfolio of assets is operated by a diverse group of healthcare companies, predominantly in a triple-net lease structure. Its assets span all regions within the US, as well as in the UK. Omega's headquarters are located at 200 international Circle Suite 3500, Hunt Valley, MD, 21030. Omega is traded on the New York Stock Exchange under the ticker symbol "OHI."

## CLASS ACTION ALLEGATIONS

20.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own MedEquities common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

21.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

22.     The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of January 2, 2019, there were approximately 31,840,651 shares of MedEquities common stock issued and outstanding. All members of the Class may be identified from records maintained by MedEquities or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

23.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

        (a)     Whether defendants violated Section 14(a) of the Exchange Act and Rule

14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable harm were the Proposed Transaction consummated.

24.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

25.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

26.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**Company Background**

27.     Incorporated in April 2014, MedEquities is a self-managed and self-administered real estate investment trust that invests in a diversified mix of healthcare properties and healthcare-related real estate debt investments.  MedEquities primarily invests in fee ownership of facilities with long-term triple-net leases with healthcare providers or operators.  MedEquities also provides debt financing to healthcare providers, typically in the form of mortgage and mezzanine loans and capital to finance the development of healthcare properties.

28.     MedEquities conducts its business through an umbrella partnership real estate

investment trust ("UPREIT") structure, consisting of MedEquities Realty Operating Partnership LP ("MedEquities OP") and its subsidiaries. MedEquities is the sole member of MedEquities OP GP, LLC, the general partner of MedEquities OP. All of MedEquities' assets are held by, and its operations are conducted through, MedEquities OP. As of December 31, 2018, MedEquities owned all of the outstanding units of limited partnership interest of MedEquities OP.

29.     As of December 31, 2018, MedEquities' portfolio was comprised of 34 healthcare facilities that contain a total of 2,758 licensed beds. The healthcare facilities are comprised of 20 skilled nursing facilities, five behavioral health facilities, three acute care hospitals, two long-term acute care hospitals, two inpatient rehabilitation facilities, one assisted living facility and one medical office building. MedEquities owns 100% of nearly all of its properties. The Company's properties were acquired for an aggregate gross purchase price of $598.1 million, and are located in Texas, California, Nevada, South Carolina, Indiana, Connecticut and Tennessee. Additionally, as of December 31, 2018, MedEquities has six healthcare-related debt investments totaling $52.0 million.

30.     In November 2018, MedEquities signed a new, 15-year triple-net master lease for ten skilled nursing facilities in Texas ("Texas Ten Portfolio"). MedEquities acquired the Texas Ten Portfolio in 2015 for $145 million and is the largest gross investment held by MedEquities. The initial base rent under the lease is $7.7 million with annual escalators of 2.0% and two, five-year tenant renewal options.

31.     On November 9, 2018, MedEquities issued a press release announcing its third quarter 2018 financial results, reporting total revenue of $9,678,000 for the third quarter of 2018, and total aggregate revenue of $43,954,000 for the first nine months ended September 30, 2018.

7

**The Sale Process**

32.    In early 2018, members of MedEquities' senior management and its financial advisors had a series of meetings with members of senior management and the financial advisors of a strategic party referred to in the Registration Statement as "Party A." The parties discussed their respective companies, including their respective assets and tenants, and a potential business combination.

33.    On January 29, 2018, MedEquities and Party A entered into a mutual non-disclosure agreement.

34.    On August 2, 2018, defendant McRoberts had lunch with a representative of Citi, who suggested, among other alternatives, a potential business combination between Omega and MedEquities.

35.    On August 15, 2018, a representative of Citi called Taylor Pickett ("Pickett"), the CEO of Omega, to discuss, among other potential strategic alternatives, a potential acquisition of MedEquities by Omega.

36.    On August 16, 2018, Citi presented to Omega an overview of MedEquities and an illustrative net asset value ("NAV") analysis and capitalization summary of MedEquities based on publicly available information. Citi inquired as to whether Omega would be interested in pursuing a potential business combination transaction with MedEquities. Pickett confirmed Omega's preliminary interest in exploring a potential transaction with MedEquities.

37.    On August 17, 2018, a representative of Citi called defendant McRoberts to inform him of Omega's interest in exploring a potential transaction with MedEquities. Defendant McRoberts confirmed MedEquities' preliminary interest in exploring a potential transaction with Omega.

38.     On August 23, 2018, MedEquities and Omega entered into a non-disclosure agreement.

39.     On September 4, 2018, defendant McRoberts received an unsolicited call from the CEO of a strategic buyer referred to in the Registration Statement as "Party D," to express Party D's interest in a potential asset-level acquisition of MedEquities' skilled nursing facilities based on its review of MedEquities' publicly available information.  MedEquities and Party D were subject to a prior mutual non-disclosure agreement.

40.     On September 27, 2018, Party D submitted to MedEquities a written non-binding indication of interest regarding an asset-level acquisition of MedEquities' skilled nursing facilities for an aggregate gross purchase price between $172.0 million and $181.0 million in cash.  MedEquities did not pursue further discussions with Party D regarding the proposal.

41.     On October 11, 2018, Omega submitted to MedEquities a written non-binding proposal for an all-stock transaction based on an exchange ratio of 0.333 of a share of Omega common stock for each share of MedEquities common stock, which represented an implied price of $10.65 per share of MedEquities common stock based on the closing price of Omega common stock on October 12, 2018.

42.     On October 18, 2018, MedEquities and Citi signed an engagement letter formalizing the retention of Citi as financial advisor to MedEquities in connection with a potential transaction.

43.     On October 23, 2018, at the direction of the Board, Citi called representatives of Omega to convey a counterproposal at an exchange ratio of 0.355 of a share of Omega common stock for each share of MedEquities common stock.

44.     On October 30, 2018, Citi delivered its relationship disclosure ("Citi Relationship

Disclosure") to MedEquities, which was subsequently shared and reviewed with the Board. In the Citi Relationship Disclosure, Citi included certain disclosures regarding, among other things: (i) Citi's investment banking, commercial banking and other financial services to both MedEquities and Omega and aggregate compensation received for such services during the prior two-year period; (ii) that, during such period, Citi had not been engaged to provide merger and acquisition, underwriting, lending and financial advisory services to Omega; (iii) that, except as otherwise disclosed, neither Citi nor its affiliates or Citi deal team members were currently providing (or, during the course of the engagement, and without MedEquities' prior written consent, would provide) any such financial advisory services to Omega in connection with the transaction contemplated by the engagement, and, in the ordinary course of business, Citi employees, including the deal team members, meet with Omega to discuss strategic opportunities and potential transactions involving potential counterparties in Omega's industry, including MedEquities, and (iv) the content and nature of the discussions Citi had with representatives of Omega and MedEquities prior to Citi being engaged by MedEquities. Subsequently, the MedEquities Board ratified the engagement of Citi as MedEquities' financial advisor in connection with the merger.

45. On November 2, 2018, Omega conveyed a revised proposal for an all-stock transaction based on an exchange ratio of 0.342 of a share of Omega common stock for each share of MedEquities common stock. Later on November 2, 2018, MedEquities conveyed a counterproposal of a 0.348 exchange ratio (conditioned upon MedEquities not paying a dividend for the third quarter of 2018) and the inclusion in the merger agreement of a window-shop provision with a termination fee equal to 1.75% with respect to the first 30 days following execution of the merger agreement and 3.75% thereafter.

46.     On November 3, 2018, Omega communicated in writing its agreement to move forward with the 0.348 exchange ratio.

47.     On November 5, 2018, Omega submitted to MedEquities a revised written non-binding proposal for an all-stock transaction based on an exchange ratio of 0.348 of a share of Omega common stock for each share of MedEquities common stock, as well as the inclusion in the merger agreement of a 30-day window-shop period with a termination fee of 1.75% of MedEquities' enterprise value for 30 days following execution of the merger agreement and 3.75% thereafter.

48.     On November 12, 2018, MedEquities and Omega agreed upon a non-binding term sheet and entered into an exclusivity agreement with an exclusivity period through 5:00 p.m. ET on December 17, 2018.  The term sheet provided for, among other things, an exchange ratio of 0.348 of a share of Omega common stock for each share of MedEquities common stock.

49.     On November 24, 2018, defendant McRoberts and Pickett had a call during which Pickett communicated that Omega was not willing to proceed with a transaction at an exchange ratio of 0.348 due to its revised valuation of MedEquities and additional due diligence, as well as the increase in the price of the Omega common stock from $32.74 per share when the 0.348 exchange ratio had been informally agreed upon to $36.33 per share as of November 23, 2018.

50.     On December 10, 2018, MedEquities received a written non-binding indication of interest from Party D to acquire all of the issued and outstanding shares of MedEquities common stock for $8.55 per share. The proposal indicated that Party D was open to an all-cash transaction, an all-stock transaction or a combination of cash and stock.

51.     On December 19, 2018, Omega communicated to MedEquities a proposal with merger consideration for each share of MedEquities common stock comprised of  (i) 0.230 of a

share of Omega common stock and (ii) $2.02 in cash, plus a special cash dividend of $0.21 per share of MedEquities common stock to be paid at closing of the transaction.

52.     The next day, MedEquities and Omega informally agreed on merger consideration for each share of MedEquities common stock comprised of (i) 0.235 of a share of Omega common stock, and (ii) $2.00 in cash, plus a special cash dividend of $0.21 per share of MedEquities common stock to be paid at closing of the transaction. In addition, MedEquities would be permitted to pay its regular quarterly dividend of up to $0.21 per share with respect to the fourth quarter of 2018 and all subsequent dividends in accordance with past practice, other than with respect to the third quarter of 2018.

53.     On January 1, 2019, the Board met, Citi delivered its fairness opinion and the Board approved the execution, delivery and performance by MedEquities of the Merger Agreement and the consummation of the transactions contemplated thereby.

54.     On January 2, 2019, MedEquities and Omega executed and delivered the Merger Agreement.

**The Proposed Transaction**

55.     On January 2, 2019, Omega and MedEquities issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> **Hunt Valley, MD and Nashville, TN – January 2, 2019 –** Omega Healthcare Investors, Inc. (NYSE: OHI) ("Omega") and MedEquities Realty Trust, Inc. (NYSE: MRT) ("MedEquities") today announced the execution of a definitive merger agreement under which Omega will acquire all of the outstanding shares of MedEquities. The transaction represents an enterprise value of approximately $600 million for MedEquities and further diversifies Omega's assets and operators. The boards of directors of both companies have unanimously approved the transaction.
>
> Under the terms of the agreement, MedEquities stockholders will receive a fixed exchange ratio of 0.235 Omega common shares plus $2.00 in cash for each share of MedEquities common stock held by them, which represents a value of $10.26

per MedEquities share based on the $35.15 closing price for Omega common stock on December 31, 2018. Separately, MedEquities will declare a special cash dividend of $0.21 per share payable to the holders of record of MedEquities common stock as of the end of trading on the New York Stock Exchange on the trading day immediately prior to the closing date of the transaction. There are no changes planned to Omega's board of directors or executive officers related to the merger transaction.

Taylor Pickett, Omega's Chief Executive Officer stated, "John and his team have built a high quality diversified portfolio, which should provide Omega with meaningful future growth opportunities." Mr. Pickett continued, "This acquisition reinforces our commitment to the skilled nursing and senior housing industry, while adding new asset types to our portfolio furthering our strategic objectives."

John McRoberts, Chairman and Chief Executive Officer of MedEquities added, "This is a very compelling transaction for MedEquities' stockholders. We believe going forward that our stockholders will be in an excellent position from having an investment in Omega's diversified portfolio. Taylor and his team have a long and successful history of asset growth and diversification as well as solid asset management. Additionally, our operators will benefit from Omega's depth of knowledge of the healthcare industry, their strong capital position and their commitment to support and grow with their tenants."

## Insiders' Interests in the Proposed Transaction

56.     MedEquities insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of MedEquities.

57.     Upon consummation of the Proposed Transaction, each restricted stock unit held by MedEquities executive officers, whether vested or unvested, will automatically vest and convert into the right to receive the Merger Consideration.  The following table sets forth the outstanding MedEquities restricted shares held by MedEquities' executive officers and directors:

| Name | Outstanding MedEquities Restricted Shares | Estimated Value of Accelerated Vesting of Unvested Restricted Shares(1) |
| --- | --- | --- |
| *Named Executive Officer:* | | |

| | | |
|---|---|---|
| John W. McRoberts | 25,751 | $ |
| William C. Harlan | 25,751 | |
| Jeffery C. Walraven | 13,168 | |
| **Non-Employee Director:** | | |
| Randall L. Churchey | 6,708 | |
| John N. Foy | 6,708 | |
| Steven I. Geringer | 6,708 | |
| Stephen L. Guillard | 6,708 | |
| Elliott Mandelbaum | 4,456 | |
| Todd W. Mansfield | 6,684 | |

58.     In addition, if they are terminated in connection with the Proposed Transaction, MedEquities' named executive officers are set to receive substantial cash severance payments, as set forth in the following table:

| Executive Officer | Estimated Maximum Severance[1] | |
|---|---|---|
| John W. McRoberts | $ | 923,267 |
| William C. Harlan | | 931,817 |

59.     Additionally, in connection with the entry into the Merger Agreement, MedEquities entered into retention incentive award agreements with each of its executive officers.   Pursuant to the retention agreements, if the merger is consummated, defendants McRoberts and Harlan and Jeffery C. Walraven, the Company's Executive Vice President and Chief Financial Officer, will be paid cash awards of $486,000, $186,000 and $121,000, respectively.

**The Registration Statement Contains Numerous Material Misstatements or Omissions**

60.     Defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to MedEquities' stockholders.  The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting decision in connection with the Proposed Transaction.

61.     Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the actual intrinsic standalone value of the Company and Omega; (ii) the financial analyses performed by the Company's financial advisor Citi; (iii) the background of the Proposed Transaction; and (iv) Citi's potential conflicts of interest.   Accordingly, MedEquities stockholders are being asked to vote for the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning MedEquities' and Omega's Financial Projections***

62.     The Registration Statement is materially deficient because it fails to disclose material information relating to MedEquities' and Omega's management's best estimates of the

Company's and Omega's respective intrinsic value and prospects going forward.

63.     With respect to MedEquities' financial projections for fiscal years 2019 to 2023, the Registration Statement fails to disclose the following projection line items: (i) stock-based compensation expense; (ii) acquisition costs; (iii) franchise, excise and other taxes; (iv) investments and capital expenditures; (v) non-cash interest income; (vi) straight-line rental revenue; (vii) income attributable to noncontrolling interest; (viii) repayment of MedEquities' mortgage investments; (ix) cash rental income; (x) property related operating expenses; (xi) net income; and (xii) depreciation and amortization.

64.     Additionally, the Registration Statement sets forth that Citi performed "an illustrative discounted cash flow analysis of Omega in which Citi calculated the estimated present value (as of December 31, 2018) of the standalone unlevered, after-tax free cash flows that Omega was expected to generate during the fiscal year ending December 31, 2019 through the full fiscal year ending December 31, 2023, based on the forecasts and estimates relating to Omega prepared and provided by Omega management." *Id*. at 57. The Registration Statement fails, however, to disclose Omega's standalone unlevered, after-tax free cash flows that Omega was expected to generate during the fiscal year ending December 31, 2019 through the full fiscal year ending December 31, 2023, based on the forecasts and estimates relating to Omega prepared and provided by Omega management.

65.     Moreover, in connection with the Board's approval of the Proposed Transaction, the Board considered a number of factors, including "the complementary portfolios and business strategies of MedEquities and Omega will allow the combined company to capture immediate and substantial cost synergies in the form of corporate general and administrative cost savings, operating cost savings and interest expense." *Id.* at 48. Yet, the Registration Statement fails to

disclose the amount of cost synergies the combined company expects to achieve upon consummation of the Proposed Transaction.

66.     The omission of this information renders the statements in the "Opinion of MedEquities' Financial Advisor," "Certain MedEquities Unaudited Prospective Financial Information," and "Recommendation of the MedEquities Board and Reasons for the Merger" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Citi's Financial Analyses***

67.     The Registration Statement describes Citi's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Citi's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, MedEquities' public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Citi's fairness opinion in determining whether to vote in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to MedEquities' stockholders.

68.     With respect to Citi's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the Company's unlevered, after-tax free cash flows that MedEquities was expected to generate during the fiscal year ending December 31, 2019 through the full fiscal year ending December 31, 2023 utilized by Citi in this analysis;[1] (ii) quantification of the adjustments to the present values of the unlevered, after-tax free cash flows and the derived terminal value

---

[1] Alternatively, to the extent the unlevered, after-tax free cash flows Citi utilized in its *Discounted Cash Flow Analysis* are disclosed on page 59 of the Recommendation Statement, the Recommendation Statement fails to and must expressly indicate this.

resulting from the forecasted changes in cash flow form net mortgage investments; (iii) the specific terminal year unlevered, after-tax free cash flow metric to which the selected perpetuity growth rates were applied to derive the terminal value; (iv) the implied terminal value multiples resulting from the analysis; and (v) quantification of the inputs and assumptions underlying the discount rate range of 7.9% to 8.7%.

69. With respect to Citi's *Selected Public Companies Analysis*, the Registration Statement fails to disclose the individual multiples for the selected companies observed by Citi as well as any benchmarking financial metrics of the selected companies.

70. With respect to Citi's *Selected Precedent Transactions Analysis*, the Registration Statement fails to disclose the NAV range provided by MedEquities' management relied upon by Citi in deriving a range of implied values per share for the Company.

71. Additionally, the Registration Statement sets forth that Citi performed a series of additional analyses for Omega, including:

- an illustrative discounted cash flow analysis of Omega in which Citi calculated the estimated present value (as of December 31, 2018) of the standalone unlevered, after-tax free cash flows that Omega was expected to generate during the fiscal year ending December 31, 2019 through the full fiscal year ending December 31, 2023, based on the forecasts and estimates relating to Omega prepared and provided by Omega management. Citi performed this illustrative analysis by generally utilizing the methodology described in the section above under "— Discounted Cash Flow Analysis" and by applying estimates of Omega's weighted average cost of capital using discount rates ranging from 6.1% to 6.9%;

- an illustrative analysis for Omega based on all three Valuation Ratios based on the 2019 FFO, generally utilizing the methodology described in the section above under "— MedEquities Selected Public Companies Analysis", but excluding Omega from the applicable list of selected comparable public companies;

- the estimated net asset value of Omega's assets based publicly available Wall Street research analysts' estimates;

- undiscounted publicly available Wall Street research analysts' price targets for Omega shares; and

- historical trading prices of Omega shares during the 52-week period ended December 31, 2018.

Registration Statement at 57. The Registration Statement, however, fails to include the results from any of these additional analyses for Omega. MedEquities stockholders must be provided with this information in order to adequately assess and value the Merger Consideration, as a portion of the Merger Consideration is composed of Omega stock.

72. When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

73. The omission of this information renders the statements in the "Opinion of MedEquities' Financial Advisor" and "Certain MedEquities Unaudited Prospective Financial Information" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background Process of the Proposed Transaction***

74. The Registration Statement omits material information relating to the sale process leading up to the Proposed Transaction.

75. Critically, the Registration Statement fails to expressly indicate whether the confidentiality agreements MedEquities entered into with potential buyers, including Parties A

and D, are still in effect and/or contain "don't-ask-don't-waive" standstill provisions that are presently precluding each of these parties from making a topping bid for the Company.

76.    The disclosure of the terms of the standstill provisions is crucial to MedEquities stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

77.    Additionally, the Registration Statement fails to disclose when MedEquities and Party D first entered into their mutual non-disclosure agreement, whether this agreement was the result of Party D and MedEquities discussing a possible acquisition, merger or other transaction, and if so, any proposed price terms and transaction structures related thereto.

78.    The omission of this information renders the statements in the "Background of the Merger" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Citi's Potential Conflicts of Interest***

79.    The Registration Statement fails to disclose material information concerning potential conflicts of interest faced by Citi.

80.    The Registration Statement sets forth that;

On October 30, 2018, Citi delivered its relationship disclosure (which we refer to as the "Citi Relationship Disclosure") to MedEquities, which was subsequently shared and reviewed with the MedEquities Board. In the Citi Relationship Disclosure, Citi included certain disclosures regarding, among other things: (i) Citi's investment banking, commercial banking and other financial services to both MedEquities and Omega and aggregate compensation received for such services during the prior two-year period; (ii) that, during such period, Citi had not been engaged to provide merger and acquisition, underwriting, lending and financial advisory services to Omega; (iii) that, except as otherwise disclosed, neither Citi nor its affiliates or Citi deal team members were currently providing (or, during the course of the engagement, and without MedEquities' prior written consent, would provide) any such financial advisory services to Omega in connection with the transaction contemplated by the engagement, and, in the ordinary course of business, Citi employees, including the deal team members,

meet with Omega to discuss strategic opportunities and potential transactions involving potential counterparties in Omega's industry, including MedEquities, and (iv) the content and nature of the discussions Citi had with representatives of Omega and MedEquities prior to Citi being engaged by MedEquities. Subsequently, the MedEquities Board ratified the engagement of Citi as MedEquities' financial advisor in connection with the merger.

*Id*. at 42. However, the Registration Statement fails to disclose (i) the specific timing of Citi deal team members meeting with Omega to discuss strategic opportunities and potential transactions involving counterparties in Omega's industry, including MedEquities; (ii) whether in these meetings with Omega, Citi deal team members ever provided Omega materials setting forth potential purchase prices for an acquisition of MedEquities; and (iii) the specific content and nature of the discussions Citi had with Omega prior to Citi being engaged by MedEquities.

81. Additionally, Citi acted as the lender under MedEquities' existing $300 million revolving credit facility and term loan, both of which were last refinanced in February 2017 and have subsequently been amended. The Registration Statement fails to disclose whether any of the Citi deal team members were also involved in the negotiation of the credit facility and term loan refinancing and amendment.

82. Full disclosure of investment banker conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

83. The omission of this information renders the statements in the "Background of the Merger," and "Opinion of MedEquities' Financial Advisor" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

84. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement. Absent disclosure of the foregoing material information prior to the stockholder vote

on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting decision and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

85.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

86.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

87.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.  The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the actual intrinsic standalone value of the Company and Omega, the financial analyses performed by the Company's financial advisor Citi, the background of the Proposed Transaction, and Citi's potential conflicts of interest.  The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

88.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to

vote on the Proposed Transaction.

89.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

90.     Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

91.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

92.     The Individual Defendants acted as controlling persons of MedEquities within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of MedEquities and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

93.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

94.     In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

95. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

96. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

97. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, MedEquities' stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief, in his favor and in favor of the Class and against defendants as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to MedEquities stockholders;

C.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.     Awarding Plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: March 16, 2019

/s/ Paul Kent Bramlett
Paul Kent Bramlett TN #7387/MS #4291
BRAMLETT LAW OFFICES
Paul Kent Bramlett #7387/ MS #4291
Robert Preston Bramlett #25895
40 Burton Hills Blvd., Suite 200
P.O. Box 150734
Nashville, TN 37215
Tel.: 615.248.2828
Fax: 866.816.4116
E-mail: PKNASHLAW@aol.com
          Robert@BramlettLawOffices.com

*Attorneys for Plaintiff*

OF COUNSEL:

**WEISSLAW LLP**
Richard A. Acocelli

Michael A. Rogovin
Kelly K. Moran
1500 Broadway, 16th Floor
New York, New York 10036
 Tel.: (212) 682-3025
 Fax: (212) 682-3010